IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| **JEKYLL ISLAND-STATE PARK AUTHORITY**, | |
| Plaintiff, | |
| v. | Civil Action No.: 2:21-cv-8 |
| **POLYGROUP MACAU LIMITED,** | |
| Defendant. | |

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICATION
AND TO PARTIALLY DISMISS FOR FAILURE TO STATE A CLAIM
OR, IN THE ALTERNATIVE,
PLAINTIFF'S MOTION TO EXTEND TIME TO RESPOND TO
DEFENDANT'S MOTION TO DISMISS AND
<u>PLAINTIFF'S MOTION FOR LIMITED DISCOVERY</u>**

Plaintiff Jekyll Island-State Park Authority respectfully submits this Memorandum of Law in Opposition to Defendant Polygroup Macau Limited's Motion to Dismiss for Lack of Personal Jurisdiction, or in the Alternative to Partially Dismiss for Failure to State a Claim (Dkt. 10) ("the Motion"). As explained below, the Motion should be denied in its entirety. Alternatively, to the extent that this Court believes it must consider additional evidence to evaluate Defendant's Motion, Plaintiff respectfully requests that this Court allow it to conduct limited discovery and grant an extension of time for Plaintiff to respond to the Motion following the completion of that discovery.

## I.    INTRODUCTION

The U.S. Supreme Court held that "[w]hen a company like [Defendant] serves a market for a product in a State and that product causes injury in the State to one of its residents, the State's courts may entertain the resulting suit." *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1022 (2021).

This lawsuit began when Defendant's in-house general counsel—a member of the State Bar of Georgia—called Plaintiff's executive director at his office in Jekyll Island, Georgia, on January 14, 2021. (Ex. 1, Decl. of Katrina M. Quicker, at ¶ 48; Ex. 2, Decl. of Melissa R. Cruthirds, at ¶ 7.) Defendant's general counsel, who claimed he and the executive director had met several years ago, wanted to discuss a "business goods proposal for the waterpark." (Ex. 2 at ¶ 7.) A day later, Plaintiff's general counsel had a telephone conversation with Defendant's general counsel. (*Id.* at ¶ 8.) During that call, Defendant's counsel explained that Defendant sold "Summer Waves" branded products through big box retailers throughout the country and wanted to develop its own website around the "Summer Waves" mark. (*Id.* at ¶ 9.) Because Plaintiff has owned the domain name www.summerwaves.com for two decades, Defendant wanted to buy it.

(Ex. 2 at ¶¶ 6, 9.) Defendant's general counsel said that he previously lived in Georgia and would be in Atlanta through the beginning of February 2021. (*Id.* at ¶ 9.) He suggested that Defendant could purchase the domain name through a purchase plus a donation. (*Id.*)

Defendant claims it is a merely an intellectual property holding company and permits other entities like Walmart to sell products bearing its registered trademarks to consumers in the Southern District of Georgia. (Dkt. 10 at 1.) But Defendant represents itself to *courts*, the USPTO, its U.S. customers, and the public as one, unified company, including on its website www.polygroup.com:

> Learn about the humble beginnings of **the Polygroup® family of companies** and how we grew to be **one of world's biggest** creators of innovative, high-quality Winter and Summer Seasonal products.

> Today, **the Polygroup® companies** include global industry leaders in the manufacturing of artificial Christmas trees, **above ground pools and summer inflatable toys.** Collectively **employing 13,000+ people across multiple factory and other locations,** we are committed to offering the most innovative, fun-filled and high quality products for customers to enjoy with their family and friends all year round.

> You can find **Polygroup® products** at **most major retailers around the world[.]**

(Ex. 1, Decl. of Katrina M. Quicker, at ¶¶ 22-24, 52; Dkt. 1-7 at 24-26.) It offers its customers a toll-free phone number to be answered by its "**United States** Customer Service" desk that is open Monday through Friday. (*Id.* at ¶ 25.) Its "retail partners" include some of the biggest companies in America: The Home Depot, Walmart, Target, Michaels, Lowe's, Costco, and Amazon, to name a few. (*Id.* at ¶¶ 24, 35-36.) Michaels, for example, has sold over 550 different Polygroup products for the past twenty years. (*Id.* at ¶ 55.) And one of Polygroup's retailers—The Home Depot—is headquartered here in Georgia and offers at least 81 of Polygroup's "Summer Waves" branded merchandise for purchase and delivery. (*Id.* at ¶¶ 35-39.)

Similarly, Defendant's e-commerce website www.polygroupstore.com also holds itself out as one family of companies:

> Polygroup is the world's largest designer and manufacturer of artificial Christmas trees and seasonal lighting. Additionally, ***Polygroup is a diversified leading manufacturer of above-ground swimming pools, summer inflatable toys and air mattresses***.
>
> Since our inception over 25 years ago, the ***Polygroup family of companies*** continues to expand and offer a wide range of products and services to meet emerging customer needs. ***The Polygroup family of companies includes factories and operations in*** *China, Thailand, Europe and* ***the United States***. Through a completely vertically integrated manufacturing process, Polygroup has gained a competitive advantage in the markets that we serve.

(*Id.* at ¶¶ 26.) It, too, offers its customers a toll-free phone number for its "***US Customers***" desk that is open Monday through Friday. (*Id.* at ¶ 27.) The website offers many of Polygroup's products, including 389 "Summer Waves" branded products for use in pools. (*Id.* at ¶¶ 28-32.) Consumer confusion should not be shocking; a consumer searching for "summer waves" on the Internet will first find Plaintiff's water park, and second, will find Defendant's above-ground pools for sale. (*Id.* at ¶¶ 33-34.)

A consumer may easily purchase the infringing trademarked products on the www.polygroupstore.com. (*Id.* at 6.) In fact, with this lawsuit pending, on July 29, 2021, Plaintiff's in-house counsel purchased a "Summer Waves" branded hopscotch sprinkler from the website, and ***had it directly shipped to Jekyll Island-State Park Authority***. (Ex. 2, Decl. of Melissa R. Cruthirds, at ¶¶ 10-27.) Similarly, three others *separately* purchased "Summer Waves" branded merchandise and had it shipped to various locations around Georgia. (Ex. 1 at ¶¶ 5-21; Ex. 3, Decl. of Raquel M. Gayle, at ¶¶ 6-21; Ex. 4, Decl. of Kathryn A. Vance, at ¶¶ 6-23.) Each of the four individuals received the "Summer Waves" merchandise in packages and with packing slips that bear Defendant's registered trademarks for the Polygroup word mark, the

Polygroup logo.[1] (Ex. 1 at ¶¶ 20-21, 40, 42; Ex. 2 at ¶¶ 26-27; Ex. 3 at ¶¶ 20-21; and Ex. 4 at ¶¶ 22-23.)

Despite arguing that it had no contacts warranting personal jurisdiction in Georgia or anywhere in the United States (Dkt. 10 at IV), Defendant has filed 70+ trademark applications and at least 34 patent applications in the United States Patent and Trademark Office. (Ex. 1 at ¶¶ 41, 49.) To secure a federal trademark registration, the owner of the mark must use the mark in commerce on or in connection with all the goods and services listed in the application as of the application filing date. 15 U.S.C. §1051(a). And in addressing the current USPTO audit of its "Polygroup" trademark registration (the USPTO is currently refusing to renew Defendant's trademark registration until and unless Defendant produces appropriate specimens showing use of the mark in each of the goods identified in the registration), Defendant pointed to its 31 other U.S. trademark registrations for support. (*Id.* at ¶ 40.) More incredible, Defendant's outside trademark counsel engaged to prosecute its trademark applications and registrations—including the three at issue in this lawsuit—are based in Atlanta, Georgia. (Dkt. 1-5 at 2; Dkt. 1-6 at 3; Dkt. 1-7 at 3; Ex. 1 at ¶¶ 40, 43, 44.) In fact, also participating in the prosecution of its trademarks is Defendant's General Counsel Eric Szweda, who is a member of the State Bar of Georgia. (Ex. 1 at ¶¶ 43, 44, 48.) According to LinkedIn, Polygroup has at least two other employees currently working in Georgia, and one former employee. (*Id.* at ¶¶ 45-47.)

Defendant has also made extensive use of the United States courts and administrative agencies for resolving disputes. For example, the collective "Polygroup" has litigated in 68 different cases, and "Polygroup Macau" has litigated in at least 19 different cases. (*Id.* at ¶¶ 50-51.) Some of those cases involve Defendant affirmatively enforcing its U.S. patents in federal

---

[1] The product packaging includes "SUMMER WAVES 3D" with a "TM" instead of the circle R symbol.

district courts, the Federal Circuit, and at the PTAB. (*Id.* at 51 at # 2, 4-5, 7, 10, 11, 13.) Interestingly, in at least one case, Defendant admitted in its answer that venue was proper and that the Polygroup companies are related. (*Id.* at ¶ 52.)

## II.    LEGAL STANDARD FOR MOTION TO DISMISS

### A.    RULE 12(B)(2)

When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a Rule 12(b)(2) motion, the plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010). If the defendant "challenges jurisdiction by submitting affidavit evidence in support of its position, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (citations omitted). At that point, the court takes as true any allegations in the complaint that are uncontroverted by the defendant's affidavit, *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988), while drawing all reasonable inferences arising from the proof, and resolving all factual disputes, in the plaintiff's favor. *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002); *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1283 (Fed. Cir. 2005).

### B.    RULE 12(B)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint need not contain "'detailed factual allegations,' but must 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Gibson v. Hunt*, No. 1:06-CV-3059-TWT, 2007 WL 2001733, at *1 (N.D. Ga. July 5, 2007) (citations omitted). When reviewing a motion to dismiss, the Court must take the allegations of the complaint as true and must construe those allegations

in the light most favorable to the plaintiff. *See Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008). And public records are among the permissible facts that a court may consider on a motion to dismiss. *See Universal Express, Inc. v. SEC*, 177 Fed. App'x. 52, 53 (11th Cir. 2006). Further, "[t]he Eleventh Circuit has stated that 'the threshold of sufficiency to which a complaint is held at the motion-to-dismiss stage is exceedingly low.'" *Espana Informatica, S.A. v. Top Cargo, Inc*., No. 08-20276-CIV, 2008 WL 11331683, at *3 (S.D. Fla. Apr. 28, 2008) (quoting *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 880 (11th Cir. 2003)).

## III.   LEGAL STANDARD FOR PERSONAL JURISDICTION

### A.   DEFENDANT IS SUBJECT TO PERSONAL JURISDICTION UNDER THE FEDERAL LONG-ARM STATUTE

Where a foreign defendant is not subject to personal jurisdiction in any one state, a court may still exercise specific personal jurisdiction over a defendant whose contacts with the United States as a whole are sufficient to warrant such exercise. *See Oldfield v. Pueblo De Bahia Lora, S.A*., 558 F.3d 1210, 1220 (11th Cir. 2009) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Under the federal long-arm statute of Fed. R. Civ. P. 4(k)(2):

> (2) *Federal Claim Outside State-Court Jurisdiction.* For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>
> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
>
> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2). Rule 4(k)(2) was implemented to fill a void in "the enforcement of federal law in international cases." *Porina v. Marward Shipping Co*., 521 F.3d 122, 126 (2d Cir. 2008) (citing Fed. R. Civ. P. 4(k) advisory committee's notes to 1993 amendments).

A Plaintiff does not need to assert jurisdiction under Rule 4(k)(2) in the Complaint. "Rule 4(k)(2) can be considered even when the plaintiff has affirmatively pled a different basis for

personal jurisdiction." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1296 (Fed. Cir. 2012). To claim personal jurisdiction under Rule 4(k)(2), a plaintiff must establish three elements: (1) the claim arises under federal law, (2) the defendant is not subject to personal jurisdiction of any state, and (3) the court's exercise of personal jurisdiction comports with due process. *See Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1159 (9th Cir. 2006). All three elements are present here.

### 1.    Plaintiff's Case Arises Under Federal Law

Plaintiff's Complaint alleged, *inter alia*, violations of trademark laws under the Lanham Act. Accordingly, this case arises under federal law—not under diversity jurisdiction as alleged by Defendant in its Motion. *Compare* Dkt. 6, ¶¶ 3, 4 to Dkt. 10 at 3. The first factor of Rule 4(k)(2) is met.

### 2.    Defendant Claims It Is Not Subject To Suit In Any State

Defendant states that it is not subject to personal jurisdiction in any state in which Plaintiff may properly seek redress. (Dkt. 10 at 11.) Thus, the Court is entitled to use Rule 4(k)(2). *See Oldfield v. Pueblo De Bahia Lora, S.A.,* 558 F.3d 1210, 1218 & n.22 (11th Cir. 2009) ("[I]f . . . the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2).") (citation omitted)).

### 3.    The Exercise Of Jurisdiction In Georgia Is Fair And Comports With Due Process

The exercise of personal jurisdiction comports with due process if the defendant has established "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Oldfield,* 558 F.3d at 1220. Analysis of this factor under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction

analysis, but instead of considering the defendant's contacts with the forum state, the court

considers defendant's "contacts with the nation as a whole." *Id*. Two factors to consider are:

> (1)  Whether defendant purposefully availed itself of the privilege of conducting
> activities in the forum; and

> (2)  Whether the claim arises out of or relates to the defendant's forum-related
> activities.

*Id.* The objective of the analysis is to ensure "that a defendant will not be haled into a jurisdiction

solely as a result of random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 475

(citations omitted). It places responsibility on defendant's own actions that create a substantial

connection with the forum. *Id.* The Court's "inquiry must focus on the direct causal relationship

among 'the defendant, the forum, and the litigation.'" *Oldfield,* 558 F.3d at 1220.

(i)  <u>Defendant's Purposeful Availment</u>

Applying for and prosecuting trademark registrations is the consummate act of reaching

out to the United States and availing oneself of its legal protections and privileges. *See Monster

Cable Prod., Inc. v. Euroflex S.R.L.*, 642 F. Supp. 2d 1001, 1010 (N.D. Cal. 2009) ("It is

reasonable and does not offend 'traditional notions of fair play and substantial justice' to require

[Defendant] to submit to the burden of litigation" after it invoked the benefits and protections of

trademark law.); *see also Touchcom, Inc. v. Bereskin & Parr,* 574 F.3d 1403, 1416 (Fed. Cir.

2009) ("one who has sought and obtained a property interest from a U.S. agency has

purposefully availed itself of the laws of the United States"); *Concat LP v. Unilever, PLC*, 350 F.

Supp. 2d 796, 810 (N.D. Cal. 2004) (finding exercise of jurisdiction appropriate where

defendants applied for and obtained US patents).

In *Monster Cable Prods*., the foreign defendant's only contact with the U.S. was an

intent-to-use trademark application filed with the USPTO. *Monster Cable Prods*., 642 F. Supp.

2d at 1010. The plaintiff filed a lawsuit after an unsuccessful opposition before the USPTO.

8

Noting that U.S. trademark registration "invokes the benefits and protections of [U.S.] trademark law" and permits the registrant "to sue for protection against allegedly infringing marks," the Court ruled that **the trademark application alone** was enough to support the exercise of personal jurisdiction. *Id*.; *see also Kinetic Concepts, Inc. v. Bluesky Med. Corp.*, No. SA-03-CA-832-RF, 2004 WL 2550586 (W.D. Tex. Sept. 24, 2004) (existence of federal registrations, products' availability in forum, and consumer warranties on such products were sufficient to support exercise of specific personal jurisdiction).

In addition to securing 70+ trademark registrations, Defendant has also filed at least 34 U.S. patent applications. (Ex. 1 at ¶¶ 41, 49.) The Federal Circuit held that **_one_** U.S. patent was purposeful availment sufficient for minimum contacts. *See Touchcom,* 574 F.3d at 1416 (explaining that obtaining a U.S. patent requires submitting documents to the USPTO, being or working with U.S. patent agents, and other interactions with the USPTO).

Further, Defendant repeatedly has used the United States courts and administrative agencies throughout the past two decades, including filing multiple lawsuits as a plaintiff, two Federal Circuit appeals, and an IPR Petition. (*Id.* at ¶¶ 50-51.) Thus, exercising jurisdiction over Defendant here would not place an undue burden on Defendant, as it has already availed itself of the U.S. market and has substantial and regular contacts with the U.S., including as described in its previous litigations. *See Touchcom,* 574 F.3d at 1417 (Defendant's "seeming familiarity with the U.S. legal system" leads to the conclusion that "the burden on [Defendant] in defending this case in the United States is minimal.").

In addition, the e-commerce site—www.polygroupstore.com—advertises and sells products throughout that bear trademark registrations owned by Defendant. (Ex. 1 at ¶¶ 7-22, 29.) If someone wishes to purchase Polygroup's trademarked goods online in the United States,

they do so on a site reflecting Defendant's trademarks and presumably owned by Defendant. (Ex. 1 at ¶¶ 5-22; Ex. 3, Decl. of Raquel M. Gayle, at ¶¶ 6-21; Ex. 4, Decl. of Kathryn A. Vance, at ¶¶ 6-23.) In fact, Defendant operates a website that allows customers to directly purchase items seemingly irrespective of their location. (Ex. 1 at ¶¶ 5-21, 26; Ex. 2 at ¶¶ 10-27; Ex. 3 at ¶¶ 6-21; Ex. 4 at ¶¶ 6-23.) Further inspection of the Defendant's website reveals multiple customer service contacts, the first of which is their "United States Customer Service" call number. (Ex. 1 at ¶¶ 25, 27.) Polygroup's ownership of the e-commerce site alone establishes jurisdiction, especially where, as here, the allegedly infringing goods are sold on the site. *See Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F3d 158, 171 (2nd Cir. 2010) (e-commerce alone sufficient national contacts, especially where infringing goods sold online).

### B.    DEFENDANT IS SUBJECT TO PERSONAL JURISDICTION UNDER GEORGIA'S LONG-ARM STATUTE

Not only does this Court have jurisdiction over the Defendant under Rule 4(k)(2), it also has jurisdiction under Georgia's long-arm statute. Determining whether a court has personal jurisdiction requires a two step-inquiry: (1) whether jurisdiction exists under the Georgia long-arm statute and (2) whether exercising jurisdiction comports with due process. *See Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc*., 593 F.3d 1249, 1274 (11th Cir. 2010).

Georgia's long-arm statute provides that a court may exercise personal jurisdiction over a nonresident defendant who transacts "*any* business" within the state or commits a tortious act within the state. *See* O.C.G.A. § 9-10-91(1)-(2). The statute further allows the exercise of jurisdiction if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in Georgia. *See* O.C.G.A. § 9-10-91(3). To satisfy the Georgia long-arm statute, the plaintiff must show that personal jurisdiction is permitted under one of the express statutory

bases, interpreted and applied literally. *Diamond Crystal*, 593 F.3d at 1259. The Georgia

Supreme Court advised to interpret this statute's "transacting business" liberally and "to uphold

the jurisdiction of the court of the plaintiff's residence in actions, arising either directly or

indirectly, out of such transactions." *Davis Metals, Inc. v. Allen*, 198 S.E.2d 285, 287-88 (Ga.

1973); *see also Warren v. Warren*, 287 S.E.2d 524, 525 (Ga. 1982) ("this court has interpreted

the long-arm statute *liberally* …") (emphasis added). The Court must "examine all of a

nonresident's tangible and intangible conduct and ask whether it can fairly be said that the

nonresident has transacted any business within Georgia" and may consider "a nonresident's mail,

telephone calls and other intangible acts, though occurring while the defendant is physically

outside of Georgia." *Diamond Crystal*, 593 F.3d at 1264.

After determining that Georgia long-arm statute authorizes personal jurisdiction over a

defendant, the Court analyzes due process. "Due process requires that (1) a nonresident

defendant has certain minimum contacts with the forum state and (2) the exercise of jurisdiction

does not offend 'traditional notions of fair play and substantial justice.'" *Thomas v. Strange

Engr.*, *Inc.*, CV 111-074, 2012 WL 993244, at *5 (S.D. Ga. Mar. 22, 2012) (citing *Diamond

Crystal Brands*, 593 F.3d at 1267). To establish minimum contacts, a plaintiff must demonstrate

the defendant "purposefully availed" itself to the protection and laws of Georgia, such that it

"should reasonably anticipate being haled into court" here. *Diamond Crystal Brands*, 593 F.3d at

1268. In other words, the defendant must have "fair warning" that its activities in the forum may

subject it to jurisdiction. *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985).

Remarkably, while Defendant contends it "does not do or solicit business in Georgia or

any other state in the U.S.", Dkt. 10 at 1, Defendant's secured the three disputed, at-issue

trademark registrations (as well 70 other trademark applications and registrations) ***using***

***attorneys based in Atlanta, Georgia***. (Dkt. 1-5 at 2; Dkt. 1-6 at 3; Dkt. 1-7 at 3; Ex. 1 at ¶¶ 40, 41, 43, 44.)  Defendant's general counsel, who is also a member of the Georgia Bar, participates in the prosecution of its trademark applications. (Ex. 1 at ¶¶ 43, 44, 48.) He also directly contacted Plaintiff to buy Plaintiff's domain name and claimed to be in Georgia at that time. (Ex. 2 at ¶¶ 7-9.) Further, it appears Defendant has potentially had or has 3 other employees who live in Georgia. (Ex. 1 at ¶¶ 45-47.)

Furthermore, customers in the state of Georgia can order products directly from the Defendant's website and have it shipped directly to their door with no cost for shipping. (Ex. 1 at ¶¶ 5-21; Ex. 2 at ¶¶ 10-27; Ex. 3 at ¶¶ 6-21; Ex. 4 at ¶¶ 6-23.) In fact, Defendant will ship its products directly to Plaintiff Jekyll Island-State Park Authority with no cost for shipping. (Ex. 2 at ¶¶ 10-27.) The sale and shipment of multiple, infringing products to Georgia, even through third-party websites, is sufficient to establish that Defendant purposefully availed itself to the law of Georgia and satisfy due process. *See, e.g., Factory Direct Wholesale, LLC v. Giantex, Inc.*, 1:17-cv-341-WSD, 2018 WL 732570, at *5-6 (N.D. Ga. February 5, 2018).

Additionally, Defendant works with numerous retail partners from whom consumers can purchase merchandise including: Walmart, Kroger, The Home Depot, Academy Sports, Target, and Lowe's, just to name a few. (Ex. 1 at ¶ 24.) One of its large distributors—The Home Depot—is headquartered in Georgia. (*Id.* at ¶¶ 35-39.) On The Home Depot website, at least 64 "Summer Waves" branded products are available for delivery or shipment in Atlanta, Georgia. (*Id.* at 38.) A corporation "can purposefully avail itself of a forum by directing its agents or distributors to take actions." *Daimler AG v. Bauman*, 134 S. Ct. 746, 759 n.13 (2014); *see also Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987) (noting that defendant's act of "marketing the product through a distributor" may amount to purposeful availment); *In re*

*Chinese-Manufactured Drywall Prods. Liab. Litig.*, 753 F.3d 521, 531 (5th Cir. 2014) (noting that *Daimler* "embraces the significance of a principal-agent relationship to the specific-jurisdiction analysis"); *Wish Atlanta, LLC v. Contextlogic, Inc.*, No. 4:14-CV-00051 CDL, 2014 WL 5091795 (M.D. Ga. Oct. 9, 2014) (while defendant maintained a website that facilitated sales through third-party suppliers, the court denied a motion to dismiss for lack of personal jurisdiction and ruled that defendant had transacted business since it derived income from Georgia consumers).

### C.   JURISDICTIONAL DISCOVERY SHOULD BE PERMITTED

As set forth above, Plaintiff has made at least a *prima facie* showing sufficient to support further jurisdictional discovery on this issue. *See Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727 (11th Cir. 1982). If the Court determines that jurisdictional discovery is needed, Plaintiff will seek (through, for example, a 30(b)(6) deposition) discovery to identify Defendant's contacts with the U.S, the chain of how its products come to be sold in the U.S., Defendant's other entities involved in product development and distribution, and whether Defendant is an agent or alter ego of other Polygroup entities. This would require Defendant to identify which entity is responsible for the infringing products. *See Chudasama v. Mazda Motor Corp*., 123 F.3d 1353, 1367 (11th Cir. 1997) ("Resolution of a pretrial motion that turns on findings of fact, for example, a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) may require some limited discovery before a meaningful ruling can be made."); *RMS Titanic, Inc. v. Zaller*, 978 F. Supp. 2d 1275, 1302–03 (N.D. Ga. 2013) ("If the jurisdictional question is genuinely in dispute and the court cannot resolve the issue in the early stages of the litigation . . . then discovery will certainly be useful and may be essential to the revelation of facts necessary to decide the issue.").

## IV.    THIS COURT HAS JURISDICTION OVER THE CANCELLATION CLAIM.

Defendant constructs a strawman to justify dismissal of the cancellation claim: no federal court has personal jurisdiction over it, Plaintiff cannot use Rule 4(k)(2) to establish personal jurisdiction, a cancellation proceeding cannot be an independent cause of action in court, but the Trademark Trial and Appeal Board does have jurisdiction over Defendant, the TTAB is the proper venue for trademark cancellation proceedings, if Plaintiff appeals an adverse TTAB decision, then the District Court for the Eastern District of Virginia would have jurisdiction over Defendant, but this court cannot transfer to the TTAB or any court, and thus, this court must dismiss the cancellation claim. (Dkt. 10 at IV.)

Section 37 of the Lanham Act—titled "Power of court over registration"—vests a federal court with the authority to order cancellation of a registered trademark: "In any action involving a registered mark the court may . . . order the cancelation of the registrations[.]" 15 U.S.C.A. § 1119. For jurisdiction to pursue a Section 37 claim in federal court, one must hold a registered trademark. *See State of Fla., Dep't of Citrus v. Real Juices, Inc*., No. 70-251-ORL, 1972 WL 19400, at *3 (M.D. Fla. Apr. 18, 1972) ("for an action to be maintained under this section it is necessary that either the plaintiff or defendant possessed a registered mark."). A court's jurisdiction to order the cancellation of federal trademark registrations is concurrent with that of the TTAB, a federal agency that hears and decides adversary proceedings involving, *inter alia*, petitions to cancel trademark registrations. *See Sandro Andy, S.A. v. Light Inc*., Case No. 12 Civ. 2392 (HB), 2012 WL 6709268, at *2 (S.D.N.Y. Dec. 27, 2012) (finding Lanham Act grants federal courts concurrent jurisdiction with TTAB to conduct cancellation proceedings); *Nat'l Staffing Sols., Inc. v. Nat'l Staffing Specialists, LLC*, No. 2:20-CV-00534, 2020 WL 6149916, at

*2 (D. Utah Oct. 20, 2020) (same). One basis for cancelling a registration is fraud on the USPTO. *See* 15 U.S.C. §§ 1064(3), 1119.

Here, Plaintiff's complaint pursues claims of federal trademark infringement, federal unfair competition, common law trademark infringement and unfair competition, and cancellation of trademark registration for fraud. (Dkt. 6 at 10-14.) Thus, federal question jurisdiction separately exists. And this case involves more issues than just whether Defendant's registrations should be cancelled; Plaintiff seeks injunctive relief and damages for trademark infringement. (Dkt. 6 at 15-18.) The TTAB does not adjudicate issues of trademark infringement, and unlike a federal district court, the TTAB cannot provide relief for an infringement claim, "either injunctive or by way of damages." *Rhoades v. Avon Prod., Inc*., 504 F.3d 1151, 1163 (9th Cir. 2007). *Id.* This court exercising jurisdiction is thus proper.

## V.    PLAINTIFF ADEQUATELY PLED ITS CANCELLATION CLAIM BASED ON FRAUD.

"A third party may petition to cancel a registered service mark on the grounds that the registration was obtained fraudulently." *Metro Traffic Control, Inc. v. Shadow Network Inc*., 104 F.3d 336, 340 (Fed. Cir. 1997). Fraud in procuring a trademark occurs "when an applicant knowingly makes false, material representations of fact in connection with his application." *In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009). "[T]he obligation which the Lanham Act imposes on an applicant is that he will not make knowingly inaccurate or knowingly misleading statements in the verified declaration forming a part of the application for registration." *Metro Traffic Control, Inc.,* 104 F.3d at 340.

In stating a claim of fraud, Federal Rule of Civil Procedure 9(b) requires that a complaint set forth (1) precisely what statements or omissions were made, (2) the time and place of each statement and the person responsible for the same, (3) the content of such statements and how

they misled the PTO, and (4) what the defendant gained through the fraud. *See Ziemba v. Cascade Int'l. Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001). Rule 9(b) "permits states of mind, including knowledge, to be pled generally." *West Coast Roofing and Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 88 (11th Cir. 2008). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990).

The core of Defendant's Motion is that Plaintiff has not pled the "what, when, where, how, and why" of the fraud. (Dkt. 10 at 12-14.) To the contrary, Plaintiff adequately pled the allegations and facts as required by *Ziemba*:

(1)  precisely what statements or omissions were made:

    a.  ¶ 81: Upon information and belief, Defendant's statements and representations in its sworn declaration relating to the dates of first use in the Section 1(a) trademark applications for the Infringing Marks that are the subject of the '983 Registration, the '985 Registration, and the '873 Registration, in connection with the goods specified therein, were false.[2]

    b.  ¶ 82: Upon information and belief, Defendant's statements and representations ***relating to the specimens of use in the Section 1(a) trademark applications for the Infringing Marks that are the subject of the '983 Registration and the '985 Registration***, in connection with goods specified therein, were false.[3]

(2)  the time and place of each statement and the person responsible for the same:

---

[2] According to a Complaint filed in the United States District Court for the Eastern District of Texas, Defendant was still developing the "Summer Waves" marked products, branding, logo, trade dress, and packaging with Walmart in October 2015. (Ex. 1 at ¶ 54.) According to Defendant's trademark applications, it was using the "Summer Waves" and "Summer Waves Elite" marks in commerce on all identified goods as of April 1, 2015, and the "Summer Waves 3d" mark in commerce on all identified goods as of January 1, 2016.

[3] Currently, the USPTO is auditing one of Defendant's other trademark registrations and refusing to accept Defendant's trademark renewal application because the submitted specimens did not demonstrate use in commerce of the mark on all identified goods in the registration. (Ex. 1 at ¶ 40.)

a. ¶ 38: ***Defendant's lawyer*** signed the three U.S. federal trademark applications to register the Infringing Marks, attesting to the truthfulness and accuracy of the statements made therein.

b. ¶ 83: Upon information and belief, Defendant ***knowingly and intentionally submitted the false statements and altered specimens*** that it was using the Infringing Marks ***for each of the goods*** included in each of the trademark applications—Inflatable pools for recreational use; play swimming pools; inflatable toys; inflatable swimming pool toys; inflatable ride-on toys; inflatable inner tubes for aquatic recreational use; inflatable toy water-slides; inflatable toy furniture; inflatable boats used as toys; floating recreational lounge chairs; inflatable float mattresses and pads for recreational use; swim floats for recreational use; beach balls and inflatable balls not for exercise use; ring buoys for recreational use; swimming aids, namely, pool rings—***as of April 1, 2015, and January 1, 2016, respectively***, when in fact, it was not.

(3) the content of such statements and how they misled the PTO:

a. ¶ 37: Defendant was required to submit to the USPTO ***a sworn declaration citing the first date of actual commercial use*** of the applied for mark in commerce.

b. ¶ 39: As the required specimen showing the Infringing Marks being used in commerce, the USPTO file history further reveals that in Defendant's SUMMER WAVES and SUMMER WAVES ELITE trademark applications***, Defendant submitted computer-generated designs for labels that reflect no evidence of the Infringing Marks being affixed to any of the described goods in Class 28*** and instead appear to consist of digitally altered images or mock-ups of the intended depiction of the marks for the goods, and do not show the applied-for marks in actual use in commerce as represented to the USPTO.

c. ¶ 40: According to Archiveorg's "WayBackMachine" records, Defendant was not using the Infringing Marks in commerce as of the date of first use included in the trademark applications; rather, Defendant was using the mark SUMMER ESCAPES.[4]

d. ¶ 41: Upon information and belief, ***Defendant's first use of the mark SUMMER WAVES for each of the goods described in the trademark applications*** for the Infringing Marks (i.e., "Inflatable pools for recreational use; play swimming pools; inflatable toys; inflatable swimming pool toys; inflatable ride-on toys; inflatable inner tubes for aquatic recreational use; inflatable toy water-slides; inflatable toy furniture; inflatable boats used as toys; floating recreational lounge chairs; inflatable float mattresses and pads for recreational use; swim floats for

---

[4] Defendant secured a trademark registration for the "Summer Escapes" mark for "above-ground swimming pools" and "above-ground swimming pool replacement parts" in 2000. According to its renewal application filed on December 2, 2020, Defendant is still using the "Summer Escapes" mark on pools and their replacement parts in commerce. (Ex. 1 at ¶ 43 at pp. 11-18.)

recreational use; beach balls and inflatable balls not for exercise use; ring buoys for recreational use; swimming aids, namely, pool rings") *was in 2019*.

e. ¶ 42: Upon information and belief, Defendant did not begin to use the Infringing Marks in commerce in connection with the described goods until thirty-one years after Plaintiff began using the SUMMER WAVES Mark and twenty-nine years after Plaintiff obtained its Federal Trademark Registration No. 1593514 for the SUMMER WAVES Mark.

f. ¶ 84: ***Defendant's false statements***—that Defendant was currently using the applied-for marks in commerce and that the specimens reflected the applied-for marks in actual use in commerce—***were material to the decision by the USPTO to approve the trademark applications for registration***.

g. ¶ 86: The USPTO relied on Defendant's aforesaid false statements.

(4) what the defendant gained through the fraud:

a. ¶ 85: Upon information and belief, Defendant knowingly and intentionally submitted the false statements and altered specimens of use for purposes of misleading the USPTO into believing that the applied-for marks that were the subject of the trademark applications were being used in commerce so to have the trademark applications approved for registration.

b. ¶ 87: ***But for Defendant's false representation that it was using the applied-for marks in commerce*** on the goods identified in the trademark applications, ***the USPTO would not have approved the applications for registration***.

c. ¶ 89: As a result of such fraud, Plaintiff has suffered and will continue to suffer irreparable harm because ***Defendant's fraud will irrevocably prejudice Plaintiff's use of its own mark*** alleged herein.

(Dkt. 6.) Plaintiff is not missing any elements required for a proper allegation to cancel a trademark registration based on fraud.

Defendant takes issue with the few "upon information and belief" averments included in the Complaint. (Dkt. 10 at 13-14.) The Eleventh Circuit has found that allegations "upon information and belief" may be sufficient to survive a motion to dismiss. "[T]o comply with Rules 8 and 9(b), 'some indicia of reliability must be given in the complaint to support the allegation of 'fraud,'" such as time, place, and substance of the alleged fraud. *Hill v. Morehouse Med. Assocs., Inc.*, No. 02-14429, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003) (quoting

*U.S. ex rel. Clausen v. Lab'y Corp. of Am.,* 290 F.3d 1301, 1311 (11th Cir. 2002)). Though Rule 9(b)'s specificity requirement often prohibits allegations of fraud from being based on information and belief, this "heightened pleading standard may be applied less stringently . . . when specific 'factual information [about the fraud] is peculiarly within the defendant's knowledge or control.'" *Hill*, 2003 WL 22019936, at *3 (citations omitted); *see also United States ex rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 308 (5th Cir. 1999) ("We have held that when the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge, the Rule 9(b) standard is relaxed.")

In each application to register the at-issue trademarks, Defendant submitted to the USPTO a declaration that the information included therein was true. (Dkt. 6-5 at 70; Dkt. 6-6 at 30; Dkt. 6-7 at 29.) Each application includes a representation that the submitted specimens show the mark currently being used in commerce. (Dkt. 6-5 at 25; Dkt. 6-6 at 26; Dkt. 6-7 at 25.) Plaintiff's Complaint states that those representations were false. (Dkt. 10 ¶ 84.) "Misrepresentations of fact made on the statement of use are, by their nature, 'material' because 'the statement of use would not have been accepted nor would registration have issued but for [the applicant's] misrepresentation, since the USPTO will not issue a registration covering goods upon which the mark has not been used.'" *CTF Dev., Inc. v. Penta Hosp., LLC*, No. C 09-02429 WHA, 2009 WL 3517617, at *3 (N.D. Cal. Oct. 26, 2009) (quoting *Medinol* that was overruled on other grounds by *Bose*). "When false facts are affirmatively written on a statement of use, it is difficult to conclude that it is not at least plausible, under the *Iqbal* standard, that such an act was done with the intent to deceive the USPTO into granting a trademark registration. Why else would such an act occur?" *Id.* at *6.

Because details around Defendant's actual date of first use of the marks in commerce for each of the goods included in the trademark application and the images representing specimens of use submitted to the USPTO are peculiarly within its knowledge or control, these facts appropriately may be alleged upon information and belief. Accordingly, Plaintiff satisfied its obligations under Rule 9(b), and followed the Federal Circuit's precedent in *Bose* for pleading and proving fraud on the USPTO. *See, e.g., Drew Est. Holding Co., LLC v. Fantasia Distribution, Inc.*, No. 11-21900-CIV, 2012 WL 234105, \*5-6 (S.D. Fla. Jan. 24, 2012) ("Fantasia alleges that Starbuzz knowingly made false statements to the USPTO in connection with Starbuzz's BLUE SURFER application. Such general knowledge pleading is sufficient to survive a motion to dismiss. . . . Construed in the light most favorable to Fantasia, it can be reasonably inferred that Starbuzz consciously tried to register for a trademark to which it knew it was not entitled—and by doing so necessarily attempted to deceive the USPTO.")

Thus, Defendant's Motion to dismiss the cancellation claim should be denied. In the alternative, discovery and leave to amend should be permitted. Courts may afford plaintiff a limited opportunity to conduct discovery for the purpose of pleading fraud with greater particularity. *See Emery v. American Gen. Finance, Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998) ("Rule 9(b) is satisfied by a showing that further particulars of the alleged fraud could not have been obtained without discovery"). Defendant cannot use a motion to dismiss to litigate the substance of Plaintiff's allegations without the benefit of providing discovery.

## VI.    CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied in its entirety. To the extent the Court believes it needs any additional evidence to evaluate whether it has personal jurisdiction over Defendant under O.C.G.A. § 9-10-91 or Federal Rule of Civil Procedure 4(k)(2)

or whether the Complaint contains sufficient allegations under Rule 9(b)—which, respectfully, it should not need—Plaintiff requests the opportunity to conduct limited discovery on such issues. Therefore, Plaintiff requests this Court grant its Motion for Limited Discovery and all other relief deemed appropriate, including Plaintiff's attorneys' fees for opposing this Motion.

Respectfully submitted 17th day of August, 2021.

CHRISTOPHER M. CARR
Attorney General
Georgia Bar No. 112505

JULIE ADAMS JACOBS
Deputy Attorney General
Georgia Bar No. 003595

KEILANI KIMES-PARKER
Senior Assistant Attorney General
Georgia Bar No. 418808

MARY JO VOLKERT
Senior Assistant Attorney General
Georgia Bar No. 728755

*/s/Katrina M. Quicker*
KATRINA M. QUICKER
Special Assistant Attorney General
Georgia Bar No. 590859
Kathryn A. Vance
Georgia Bar No. 783480
QUICKER LAW, LLC
Two Ballpark Center
800 Battery Avenue SE, Suite 100
Atlanta, GA 30339
T: 678-750-0451
F: 470-533-1182
kquicker@quickerlaw.com
kvance@quickerlaw.com

*Attorneys for Plaintiff*
*Jekyll Island State-Park Authority*

## CERTIFICATE OF SERVICE

Counsel for Plaintiff Jekyll Island-Park Authority hereby certifies that on August 17, 2021, the foregoing Plaintiff's Opposition to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, or in the Alternative to Partially Dismiss for Failure to State a Claim, or, in the Alternative, Plaintiff's Motion to Extend Time to Respond to Defendant's Motion to Dismiss and Plaintiff's Motion for Limited Discovery and accompanying documents in support were filed electronically with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filings to all attorneys of record.

*/s/Katrina M. Quicker*
KATRINA M. QUICKER
Special Assistant Attorney General
Georgia Bar No. 590859
QUICKER LAW, LLC
Two Ballpark Center
800 Battery Avenue SE, Suite 100
Atlanta, GA 30339
T: 678-750-0451
F: 470-533-1182
kquicker@quickerlaw.com
